CAAMAÑO *v.* CANCEL.

CASACIÓN procedente de la Corte de Distrito de Arecibo.

No. 55.   Resuelto en Febrero 2, 1903.

CASACIÓN.—Al establecer la regla 79 de la Orden General No. 118, serie de 1899, que el recurso de casación por infracción de ley, además de los casos expresados por la de Enjuiciamiento Civil, procederá también por error en la apreciación de toda clase de pruebas, no ha derogado los artículos 1690, en su número 7, y 1718, de la citada ley procesal, que son compatibles con aquel precepto, y de los cuales se desprende que dicho error, en el caso de ser de hecho, ha de resultar de documentos ó autos auténticos que demuestren la equivocación evidente del juzgador, y en el caso de ser de derecho, ha de citarse con precisión y claridad la ley ó doctrina legal que se crea infringida, y el concepto en que lo haya sido.

EXPOSICIÓN DEL CASO.

*Resultando:* que con fecha 8 de Febrero de 1901 Doña Isabel Caamaño Colón produjo demanda ante el Tribunal de Distrito de Arecibo, en que alegó como hechos: que en 16 de Marzo de 1893 contrajo matrimonio en la Parroquia de San Miguel de Utuado, con Don Francisco Cancel; que á

No. 55.—Decided February 2, 1903.

STATEMENT OF THE CASE.

On February 8, 1901, Isabel Caamaño Colón filed a complaint in the District Court of Arecibo, alleging therein the following facts: That on the 16th of March, 1893, she was married in the Parish of San Miguel de Utuado to Francisco Cancel; that shortly after they established their residence in the Town of Arecibo, and one night about a month and a half later, they having retired, her husband who was fond of gambling, arose and called her to shut the hall door after him as he was going to the club. But as she did not respond as quickly as he wished, he became furious and threatened to strike her with an umbrella he had in his hand, and abused her in a scurrilous manner. That seven months after the wedding they returned to Utuado, and plaintiff's father being seriously ill, Cancel her

los pocos días fijaron su residencia en la Villa de Arecibo, y como al mes y medio, una noche, después de estar en el lecho, se levantó el marido, que es aficionado al juego, y la llamó para que cerrara la puerta del zaguán por donde él se marchaba al Casino; pero como no acudiera al llamamiento con la premura que deseaba Cancel, éste, furioso, la amenazó con romperle la cabeza con el paraguas que portaba, maltratándola con frases incorrectas; que á los siete meses de la boda regresaron ambos á Utuado, y hallándose gravemente enfermo el padre de la demandante, Cancel, que le guardaba rencor por haberse opuesto á sus relaciones amorosas y haberle negado la mano de su hija, cuatro años antes del enlace, se opuso también tenazmente á que la hija visitara y cuidara á su padre, pobre y moribundo, permitiéndole al cabo después de muchas lágrimas, ruegos y súplicas, viera al autor de sus días solamente en una ó dos ocasiones, durante los cuatro meses que duró la enfermedad; que las causas principales de la oposición paterna, al enlace con Cancel, obedecían, no solo al carácter díscolo y violento de éste, sino también á que tenía varios hijos de distintas queridas, por lo que temía el padre que, habituado al brusco trato que se dá á la manceba, tratara á la esposa de igual manera y pretendiera obligarla á cuidar aquellos hijos naturales, como así sucedió á los diez meses de matrimonio, pues estando la esposa enferma, por culpa del marido que le contagió terrible dolencia, ocasional, tal vez, de la muerte del hijo de sus entrañas, Cancel trajo á la casa dos de sus hijos naturales, primero, y otro más tarde, á los cuales la demandante tuvo que atender y cuidar contra su voluntad y su deseo, por la imposición tiránica del consorte; que al violentísimo carácter de éste se aunaban constantes é infundados celos, qué la esclavizaban, impidiéndola asomarse á los balcones, concurrir al paseo, visitar á sus familiares, y hacer la vida culta y social propia de todo ser libre, y si llegaba algún caballero á la casa, bien porque lo llevara Cancel, bien en solicitud de éste, ella no podía saludarle ni dirigirle la pa-

husband, who harbored a hatred against him because four years before the marriage he had opposed his courtship of her and refused him her hand, forbade her to visit and take care of her dying father, finally consenting after many tears and supplications, to her seeing her father only on one or two occasions during the four months that his illness lasted. That the principal reason for her father's opposition to her marriage with Cancel was not only the latter's violent temper but also the fact that he had several children by different mistresses, and he feared that, being accustomed to ill treat these women, he might treat his wife in the same manner and compel her to take care of his illegitimate children, as in fact he did ten months after the marriage, for while she was sick with a terrible desease contracted from him, and which probably caused the death of her unborn child, he first brought to the house two of his illegitimate children and later another one to whom plaintiff had to attend and care for against her wishes, through the tyrannical imposition of her husband. That to the latter's violent temper was added a persistent and unfounded jealousy which reduced her to the condition of a slave, and prevented her from showing herself on the balcony, or to go walking or visit her relatives and enjoy that social intercourse which is the prerogative of civilized persons. If any gentleman came to the house, either brought by Cancel himself, or inquiring for him, she could not salute him, nor speak to him nor even look at him, for fear of bad treatment for a whole month and a succession of indescribable scenes in the house on account of his jealousy. That more than a hundred times during the eight years of their married life, when Cancel came home at night, he would vent his bad humor in vile language in the bed chamber, not allowing her to get a minute's rest, and if she was overcome by sleep, he would pull away the bed-covers and shake her violently in the bed and abuse her. On two of these occasions he took her to the cemetery

labra, ni siquiera mirarle, para impedir que hubiera malos tratos por todo un mes, sucediéndose uno y otro día escenas indescriptibles en el hogar doméstico, con motivo de los celos; que más de cien noches, en los ocho años de vida matrimonial, cuando Cancel regresaba á su morada se desahogaba con frases incorrectas proferidas en la alcoba conyugal, no dejándola dormir un solo instante, y si el sueño la rendía le quitaba los abrigos y la agitaba violentamente en el lecho, maltratándola de palabra, habiéndola conducido en dos de esas noches al Cementerio de Utuado, en donde, con amenazas de muerte, pretendía confesara hechos que solo existían en su loca imaginación; que el día 4 de Enero del año 1901, la acompañó Cancel á casa de una parienta, y como al regresar en su busca encontrara allí de visita á un caballero, su furia no tuvo límites, por lo que llamó á su padre, quien á duras penas pudo calmar las destemplanzas del marido, restableciendo la paz matrimonial; que al siguiente día, presa de dolor de cabeza y fatigada de aquella vida de vejámenes, pretendió Cancel hacerle demostraciones de cariño y como ella dignamente lo rechazara, rogándole la dejara tranquila y sola con sus penas y amarguras, por sentirse indipuesta, empezó aquél á insultarla, rompió los muebles como un demente y lanzando amenazas de muerte corrió tras ella, que despavorida escapaba por los balcones demandando auxilio, y al darle alcance levantóla en peso y la arrojó violentamente contra el pavimento, y como se separara de ella para apoderarse de un puntiagudo cristal del destrozado espejo, con intención manifiesta de agredirla, corrió nuevamente por los balcones pidiendo socorro, hasta que pudo ganar la escalera y salir á la calle, donde amotinada la gente, detuvo á Cancel, después de recibir de éste puñetazos y patadas; por lo que hubo de refugiarse en la casa de uno de sus parientes, pasando luego á la morada de su padre; invocó como fundamentos de derecho los Artículos 42, 60 y 75 del Código Civil, las Reglas 18 y 19 de la Orden General de 17 de Marzo de 1899 y la Sección 8a. del Bill

of Utuado where, under threat of death, he tried to get her to confess to acts which existed only in his wild imagination. That on the 4th of January of the year 1901, Cancel escorted her to the house of a relative, and because when he came back for her, he found there a gentleman who was on a visit, he became so furious that she had to call her father, who with great difficulty succeeded in calming him and bring about a reconcilliation. That on the following day, while she was suffering from a severe headache and felt disgusted with this life of outrages, Cancel approached her with demostrations of affection, and as she repelled his caresses with dignity, and begged him to leave her in peace with her sufferings, he began to heap insults upon her. He broke the furniture like a demented person, and threatening to kill her, ran after her as, in her fright, she fled to the balcony, crying for help. Overtaking her, he lifted her bodily and dashed her violently against the floor, and as he stepped back to seize a sharp piece of the shattered mirror with the evident intention of attacking her, she again ran through the balcony crying for help, and finally succeeded in reaching the stairs and the street where a crowd had gathered which held Cancel back after she had received from him several blows and kicks; for which reason she had to take refuge in the house of one of her relatives whence she afterward moved to that of her father. In support of her demand she invoked articles 42, 60 and 75 of the Civil Code, rules 18 and 19 of General Orders of March 17, 1899, and Section 8 of the Foraker Act, and concluded with a prayer that judgment be rendered rescinding and dissolving absolutely, by a decree of divorce, as to all binding civil effects, the matrimonial compact existing between plaintiff and the defendant Cancel, without prejudice to the reputation and religious duties of either spouse, and expressly leaving plaintiff at liberty to contract another civil marriage with whomsoever she may choose, costs to be imposed upon defendant should he contest the suit. The

Foraker: y concluyó con la súplica de que se declarara por sentencia rescindido y disuelto en absoluto, por razón de divorcio, en cuanto á todos sus efectos civiles obligatorios, el vínculo del matrimonio existente entre la demandante y el demandado Cancel, sin perjuicio de la opinión y de los deberes religiosos de cada cónyuge, dejando expresamente en libertad á la demandante para celebrar otras nupcias legítimas civiles con la persona que le plazca, y condenando en las costas al demandado, si formulare oposición.

*Resultando:* que á la demanda se acompañó copia certificada de la partida del matrimonio canónico celebrado en 16 de Marzo de 1893, en la Parroquia de San Miguel de Utuado, por Don Francisco Cancel y Doña Isabel Caamaño, y certificación del acto de conciliación, intentado sin efecto, por la segunda con el primero.

*Resultando:* que Don Francisco Cancel se opuso á la demanda, estableciendo como hechos: que en 16 de Marzo de 1893 contrajo matrimonio con Doña Isabel Caamaño, á la que, por estar muy delicada de salud y necesitar de las frescas brisas del mar, trasladó seguidamente á Arecibo, instalándole allí casa, y rodeándola de toda clase de cuidados, con asistencia médica: que á los ocho meses regresó la Doña Isabel á Utuado, donde ocuparon los altos de una casa de su propiedad, fabricados al efecto, viviendo ella holgadamente y á completa satisfacción de todas sus necesidades; que la dejó siempre en amplia libertad de visitar y pasear, lo que hacía casi todas las noches, bien sola ó bien acompañada de alguna amiga ó parienta, mientras que él día y noche trabajaba afanosamente para que á ella nada le faltara; que era tal su solicitud, que últimamente le pagaba un profesor para que aumentara sus conocimientos y fuera aprendiendo el idioma inglés; que hizo á su esposa advertencias para que no cultivara mucha amistad con el caballero á que alude en la demanda, ni fuese frecuentemente de paseo con él, porque como él no dudaba de ella, quería que las gentes jamás pudieran censurarla, advertencias que no

complaint was accompanied by a certified copy of the marriage contract attesting that same had been entered into by and between Francisco Cancel and Isabel Caamaño on the 16th of March, 1893, in the Parish church of San Miguel de Utuado, and a certificate of the act of concilliation attempted without success by the latter with the former. The suit was contested by Cancel who alleged the following facts: That on the 16th of March 1893 he had married Isabel Caamaño, and as she was very delicate in health and needed the fresh sea-breezes, he immediately removed her to Arecibo where she was installed in a house and surrounded by every comfort and provided with medical attendance; that after a stay of eight months in Arecibo, she returned to Utuado, where they occupied the upper floor of a house of their own that had been built expressly for the purpose, she living there at her ease and having all her needs supplied; that he had always allowed her full liberty to visit and go out for walks which she did almost every evening, either alone or accompanied by some female friend or relative, while he solicitously worked night and day so that she might lack nothing; that such was his solicitude, that he had recently engaged a teacher for her in order that she might extend her accomplishments and learn the English language; that he had warned his wife not to be on too friendly terms with the gentleman alluded to in the suit, nor to promenade too often with him, for as he did not doubt her, he did not wish the people ever to have any cause to censure her, a warning which was disregarded by Isabel, so that he was compelled to tell her that he did not want to see her in the street accompanied by that gentleman, and that when she went out she should be escorted by her husband, her father or her brother; this had caused some coolness and unpleasantness between the couple who, however, continued to live together until "Three Kings' Day", 1901 when owing to a great nervous excitement under which Cancel was suffering, Isabel left their home and

fueron atendidas por Doña Isabel, por lo que se vió obligado á decirla que no quería verla más en la calle, acompañada de dicho caballero, y que cuando saliera había de hacerlo con su esposo, su padre ó su hermano, lo que motivó algún enfriamiento y disgustos entre los esposos, viviendo empero, juntos, hasta el día de Reyes del año de 1901 en que, á causa de una gran excitación nerviosa que sufrió Cancel, abandonó Doña Isabel la casa conyugal sin volver más á ella, á pesar de sus reclamos; que desde su casamiento había venido favoreciendo constantemente y dispensando atenciones á la familia de su esposa, á la que siempre hizo compañía alguna hermana ó parienta, frecuentando todos su mesa y hogar; que en su estado de soltería tuvo tres hijos naturales, habiendo acogido su esposa, en la casa conyugal, al más pequeño de ellos y después á una de sus hijas, sin que para ello diera su aquiescencia; y que toda la historia de celos, disgustos, maltratos, é inconveniencias que se relatan en la demanda, son pura fantasía y solo sirven para evidenciar el arte novelesco con que se reviste una petición imposible de prosperar: alegó como excepción la falta de acción en la demandante, y concluyó con la súplica de que se declare sin lugar la demanda, con las costas á la parte actora.

*Resultando :* que entre las pruebas practicadas en el juicio, á instancia de ambas partes, figura entre las de la demandante la de absolución de posiciones por el demandado, quien confesó que en la noche del día 4 de Enero de 1901 llevó á su esposa á la casa de un respetable pariente, y cuando volvió por ella encontró allí de visita á un caballero, lo que le molestó en gran manera, en atención á que tenía prevenido á Doña Isabel Caamaño que no tuviera amistad y tratos con hombres extraños á la familia, por entender que esas amistades eran peligrosas á las jóvenes inocentes y virtuosas; que como consecuencia de dicha desobediencia tuvieron ambos, aquella misma noche, un altercado que terminó por mediación de Don Pablo Caamaño, llamado por su hija Doña Isabel; que es verdad tiene en la morada con-

never again returned, notwithstanding his demands that she should return; that from the time of his marriage he had constantly protected and considered his wife's family, some members of which always accompanied his wife, while all of them were in the habit of partaking of his board and hospitality; that while a bachelor he had had three illegitimate children, the youngest of whom had been taken into the home by his wife, as was afterward one of his daughters, without his having given his assent; and that all the story about jealousy, quarrels, ill-treatment and harshness, recited in the complaint, is pure imagination and only serves to show the art employed in ornamenting a petition which has no ground to stand upon. He pleaded the exception of want of a cause of action on the part of plaintiff and prayed that the complaint be dismissed with costs against plaintiff. In the evidence introduced by both parties at the trial, there was a set of interrogatories offered by plaintiff to be propounded to defendant, who in reply thereto admitted that on the evening of the 4th of January, 1901, he had escorted his wife to the house of a respectable relative, and when he returned for her, he had met there a gentleman visiting, which greatly annoyed him, as he had warned his wife not to have any intercourse with gentlemen not members of the family, considering that such friendships were dangerous to innocent and virtuous young women; that as a result of this disobedience they had a quarrel that night which ended through the intervention of Don Pablo Caamaño, who had been called by his daughter Doña Isabel; that it is true that he has three illegitimate children in his house who are cared for by his wife; that he had no cause whatever for complaint in regard to the conduct of Isabel who seldom went out of the house, or even showed herself frequently on the balcony; and that the medicines put up at Martinez's pharmacy, as it appears from an examination of the entires in the ledger between May and November, 1894, were for both spouses; it being noticeable that no

yugal tres hijos naturales que cuidaba su consorte; que no tenía motivo alguno de queja respecto de la conducta de Doña Isabel, la que muy rara vez salía de su morada y ni aun á los balcones se asomaba con frecuencia; y que los medicamentos despachados por la Farmacia de Don Francisco Martinez, según reconocimiento del libro de cuentas de Mayo á Noviembre de 1894, eran para ambos consortes; siendo de notar que no se ha practicado prueba pericial para venir en conocimiento de la enfermedad ó enfermedades á que pudieran ser aplicables esos medicamentos.

*Resultando:* que después de celebrado el juicio oral, previa votación, el Tribunal de Distrito de Arecibo dictó sentencia en 22 de Agosto de 1901, por la que declaró sin lugar la demanda de divorcio interpuesta por Doña Isabel Caamaño contra su esposo Don Francisco Cancel, sin especial condenación de costas; mandando se alce el depósito de la primera, que deberá ser restituida á la casa del segundo, y se cancele la anotación preventiva de dicha demanda, tomada en el Registro de la Propiedad sobre los bienes de Cancel.

*Resultando:* que contra dicha sentencia interpuso ante el Tribunal de Distrito de Arecibo Doña Isabel Caamaño Colón recurso de casación por quebrantamiento de forma, que ha sido declarado sin lugar, y también por infracción de ley, autorizado por los Artículos 1687, No. 1, 1689, No. 1, y 1690, No. 1, de la Ley de Enjuiciamiento *Criminal,* y los 78 y 79 de la Orden General No. 118, serie de 1899, alegando como motivos los siguientes:

I.—Infracción del Artículo 19, caso 3, de la Orden General de 17 de Marzo de 1899, en relación con la Sección 8ª de la Ley Foraker, puesto que reconociéndose por el Tribunal sentenciador que el matrimonio canónico se disuelve, en cuanto á sus efectos civiles obligatorios, entre otras causas, por la alegada en autos, que es la tercera del mencionado Artículo 19, ha debido decretarse el divorcio solicitado, como consecuencia de la justificación hecha de los malos tratamientos de obras inferidos por Cancel á la recurrente.

II.—Error de hecho en la apreciación de las pruebas de confesión, documental y testifical practicadas en el juicio:

expert testimony was taken to ascertain for what disease or diseases these medicines were used. After the hearing was had, the District Court of Arecibo on August 22, 1901, dismissed the suit for divorce brought by Isabel Caamaño against her husband Francisco Cancel, without special imposition of costs, and ordered the discontinuance of the custody of the latter who was to be restored to the home of the former and the cautionary notice of the complaint, entered at the Registrar's with respect to Cancel's property to be canceled. From this judgment Isabel Caamaño Colón took an appeal in cassation for error of procedure, which appeal was dismissed, and also took an appeal for violation of law, based on articles 1687, paragraph 1, 1689, paragraph 1, and 1690, paragraph 1 of the Code of Criminal Procedure, and sections 78 and 79 of General Orders No. 118, series of 1899, alleging the following grounds, to wit:

First.—Violation of section 19, paragraph 3, of General Order of March 17, 1899, taken in connection with section 8 of the Foraker Act, inasmuch as, it being recognized by the lower Court that a canonical marriage may be dissolved, as to its civil binding effects, among other causes, for the one alleged in the case at bar, which is the third one of aforesaid section 19, it should have entered the decree of divorce prayed for, as a result of the evidence of Cancel's cruelty toward the apellant. Second.—Error of fact in the consideration of the proof of confession, documentary evidence and testimony of witnesses presented at the trial: 1st.—Because in the judgment it is stated that it has not been shown that Cancel had compelled his wife, against her will, to take care of and attend to, his three illegitimate children, whereas this point was established by the testimony of Ramón Colón, taken in connection with the statement made by Cancel himself in reply to interrogatories propounded to him. 2nd.—Because the existence of a venereal disease communicated by Cancel to his wife, having been clearly shown by the testimony of three unimpeachable witnesses and the certified abstract of account issued by Martinez's pharmacy, of Utuado, the lower Court, instead of so considering it, supposes that such a point cannot be established except through a careful expert examination, not taking into account the fact that it could be, and really was established by the circumstantial evidence produced, which is now the only evidence possible, since it has reference to an ocurrence which took place six years ago. 3rd.—Because it having been clearly proven by unimpeachable witnesses, that Cancel is naturally of an

1.—Porque la sentencia dice que no se ha probado en autos que Cancel obligara á su esposa á cuidar y á atender, contra la voluntad de la misma, los tres hijos ilegítimos de aquél, siendo así que tal particular está justificado por la declaración de Ramón Colón, en relación con lo manifestado por Cancel al evacuar posiciones.

2.—Porque habiéndose probado plenamente por el testimonio de tres testigos intachables y por la certificación de la cuenta corriente expedida por la Farmacia del Señor Martinez, de Utuado, la existencia de la dolencia venérea contagiada por Cancel á su esposa, léjos de estimarlo así el Tribunal sentenciador, supone que semejante extremo no puede apreciarse más que por medio de un detenido estudio pericial, sin tener en cuenta que su justificación puede hacerse y se ha conseguido por la prueba circunstancial practicada, que es la única hoy posible, por tratarse de hecho acaecido hace seis años.

3.—Porque estando plenamente probado por testigos intachables que Cancel es, por temperamento, de carácter díscolo, celoso, suspicaz y violento, y que infundada y constantemente celaba y maltrataba á su legítima esposa y servidumbre, en los términos que expresan dichos testigos, no se dá á esa prueba su verdadero alcance, remitiéndose el fallo únicamente á los celos, en cuanto se dirigen á un cercano pariente de la recurrente, sin apreciar los demás particulares probados, cuando tales celos, gratuitos y generales, así como los malos tratamientos inferidos y el cúmulo de atrocidades de que fué víctima la esposa, no sólo resultan de la prueba testifical, sino también de las mismas posiciones absueltas por Cancel, quien confiesa que le desagradó y molestó en gran manera encontrar á Doña Isabel en una casa de honorables parientes en conversación con otras damas y un distinguido caballero, y que la había prohibido tener amistades y trato con hombres extraños á la familia, convirtiéndola así en algo que no tiene derecho á la vida social que la cultura y educación exigen.

Y 4.—Porque á los hechos acaecidos el dia de los Santos Reyes, ó sea el 6 de Enero de 1901, probados por siete testigos intachables, no se les dá la importancia que realmente tienen y se les califica de simple disgusto, sin gravedad ni trascendencia alguna, cuando los autos evidencian de manera indudable el gravísimo escándalo público promovido por el celoso Cancel en detrimento de la honra de su inocente esposa, los malos tratamientos de obra que ésta recibió á la faz de un pueblo que indignado protestaba de tal barbarie, y la tentativa de parricidio que constituye el hecho de perseguir Cancel á la recurrente, armado de puntiagudo crital, con ánimo de agredirla, lo que no realizó por haber logrado aquélla ganar la calle, donde los hijos del pueblo, luchando cuerpo á cuerpo con el agresor, salvaron á su víctima.

III.—Igual error de hecho en la apreciación de las pruebas, al estimar la Sala que los hechos probados no constituyen los malos tratamientos de obra que determinan el divorcio, pues esos hechos demuestran, bien á las claras,

ungovernable temper, jealous, suspicious and violent, and that without any justification he constantly watched and maltreated his legitimate wife and servants in the manner shown by said witnesses, this evidence is not given due weight, the judgment confining its consideration solely to the husband's jealousy with reference to a near relative of apellant, whereas said unfounded and gratuitous jealousy, as also the bad treatment and outrages inflicted upon the wife were proven, not only by the testimony of witnesses, but also by the husband himself who, in reply to interrogatories propounded by the appellant, admits that he was greatly annoyed when he found Isabel in the house of relatives in conversation with other ladies and a distinguished gentleman, and that he had forbidden her to have any intercourse of any sort with men other than members of the family, thus reducing her to the condition of a person without any right to that social life which education and culture demand. And 4th.—Because to the ocurrences that took place on "Tree Kings' Day", January 6, 1901, proven by seven unimpeachable witnesses are not given the importance which they really had, being described as a mere quarrel of no serious consequence, whereas the record of the case shows that it was without doubt nothing short of a serious public scandal, brought about by Cancel's jealousy, highly detrimental to his innocent wife's reputation; said record further showing the outrageous treatment she had received at his hand in the face of an indignant people who protested against such barbarity, and his murderous intent in his pursuing her armed with a sharp piece of glass with the intention of attacking her, which he would have succeeded in doing had she not escaped to the street where the people struggling hand to hand with the aggresor had managed to save her. Third.—Error of fact in the consideration of evidence, in holding that the facts proven do not constitute that physical cruel treatment which is a ground for divorce, whereas said facts clearly show the constant moral and physical torment of which Isabel Caamaño was a victim, she having been on the point of losing her life at the hands of her husband, which even shows the existence of the old-time *sevicia* (physical cruelty) which is not even necessary for the dissolution of the marriage bonds, not being required by the progresive and liberal spirit of our modern legislation. Fourth.—Another error of law in the consideration of the evidence, and a violation of article 1232 of the Civil Code, because in view of the result of the questions propounded to Cancel, who implicitly admits that he is of an ungovernable, violent, suspicious and jealous disposition, and confesses his ill-treatment of his wife and the countless outrages of which she was made a victim by him, these facts should have been declared by the judgment as proven, instead of which the aforesaid evidence has not been accorded in the judgment the legal weight to which it is entitled according to law. Fifth.—Another error of law in the consideration of the evidence, consisting in the failure of the trial court to consider the probatory

los constantes tormentos morales y materiales de que fué víctima Doña Isabel Caamaño, la que estuvo á punto de perder la vida á manos de su marido, lo cual patentiza hasta la existencia de la antigua sevicia, la que tampoco sería necesaria para la disolución del vínculo matrimonial, por no exigirla el espíritu innovador y altamente liberal que informa nuestra novísima legislación.

IV.—Otro error de derecho en la apreciación de las pruebas, con infracción del Artículo 1232 del Código Civil, porque visto el resultado de las posiciones absueltas por Cancel, que implícitamente reconoce su carácter díscolo, violento, suspicaz y celoso por excelencia, así como los malos tratamientos y el cúmulo de atrocidades de que hizo víctima á su esposa, ha debido así declararse probado en la sentencia, y lejos de ello se ha denegado á esa prueba el valor jurídico que en derecho se le asigna.

V.—Otro error de derecho en la apreciación de la prueba, por no haber estimado la Sala sentenciadora el valor probatorio de la de presunción, que arranca robusta de los hechos que se acreditaron en el curso del juicio, demostrativos de la causa alegada para el divorcio; presunción *juris tantum,* apreciable de conformidad con los Artículos 1249 y 1253 del Codigo Civil.

*Resultando :* que al formalizar, ante esta Corte Suprema la representación de Doña Isabel Caamaño, el recurso interpuesto por infracción de ley, expresó que lo autorizan los Párrafos 78 y 79 de la Orden General No. 118, Serie de 1899, y los Artículos 1687, 1688 y 1689 de la Ley de Enjuiciamiento Civil, y que se halla comprendido en los casos 1 y 7 del Artículo 1690 de la misma Ley, alegando como motivos, los siguientes :

I.—Los cinco consignados en el escrito de interposición del recurso, que reproduce en todas sus partes en lo relativo al de infracción de ley.

II.—Infracción del Artículo 105 del Código Civil anterior, pues en el Considerando duodécimo de la sentencia se establece que el maltrato de obra, que constituye un hecho aislado y circunstancial, no puede dar lugar á la separación de los cónyuges, ni es causa suficiente para el divorcio, infringiéndose así, por su no aplicación, el artículo citado.

III.—Error de derecho en la apreciación de la prueba, pues de lo manifestado por Cancel, en el escrito de contestación á la demanda, de la confesión del mismo al absolver posiciones, de las declaraciones de los testigos y de lo expresado en el Considerando undécimo de la sentencia, resulta probado que el día 5 de Enero de 1901, el demandado Cancel, presa de violenta agitación, maltrató de obra á su esposa, viéndose ésta precisada, para salvar su vida, á huir del domicilio conyugal, y al no estimarlo así el Tribu-

value of presumptions, when justified by the facts proven in the course of the trial, all of which tended to establish the alleged cause for divorce, presumption *juris tantum*, may be taken into consideration in conformity with articles 1249 and 1253 of the Civil Code.

In formulating the appeal for violation of law, before this Supreme Court, counsel for Isabel Caamaño stated that it was authorized by paragraphs 78 and 79 of General Order No. 118, series of 1899, and articles 1687, 1688 and 1689 of the Law of Civil Procedure, and that the same comes under paragraphs 1 and 7 of article 1690 of the latter, alleging the following grounds, to wit:

*First.*—The five grounds contained in the notice of appeal, which she reproduces in all their parts, in reference to the appeal for violation of law.

*Second.*—Violation of article 105 of the former Civil Code, inasmuch as in the twelfth conclusion of law contained in the judgment it is held that physical cruelty or illtreatment constituted by an isolated and independent act, cannot bring about the separation of the spouses, nor is it a sufficient cause for divorce, thus violating, by its non-application, the above-mentioned article.

*Third.*—Error law in the consideration of evidence, since by the statement of Cancel in his written answer to the complaint, his confession in reply to interrogatories propounded, the testimony of the witnesses, and the declaration made in the 11th conclusion of law contained in the judgment, it is proven that on the 5th of January 1901, the defendant Cancel, under violent excitement assaulted his wife who in order to save her life had to flee from the conjugal home, and in failing to recognize this fact, the lower Court has violated article 1232 of the Civil Code which declares that a confession constitutes evidence against the person making the same, thereby committing an error of law in the consideration of this evidence. The Fiscal of the Supreme Court contested the appeal by brief, counsel for respondent also contesting the same by oral argument at the hearing,

nal sentenciador, infringió el Artículo 1232 del Código Civil, que dice que la confesión hace prueba contra su autor, cometiendo, por tanto, verdadero error de derecho en la apreciación de esa prueba.

*Resultando:* que el Fiscal de esta Corte Suprema impugnó el recurso por escrito, haciendo lo propio oralmente el Letrado de la parte recurrida en el acto de la vista, á la que no asistió la representación de Doña Isabel Caamaño.

Abogado del recurrente : *Sr. Alvarez Nava.*

Abogado del recurrido : *Sr. Rossy (Manuel F.)*

Fiscal del Tribunal Supremo : *Sr. del Toro.*

EL JUEZ ASOCIADO SR. HERNÁNDEZ, después de exponer los hechos anteriores, emitió la siguiente opinión del Tribunal :

*Considerando*: que al establecer la Regla 79 de la Orden General No. 118, Serie de 1899, que el recurso de casación por infracción de ley, además de los casos expresados por la de Enjuiciamiento Civil, procederá también por error en la apreciación de toda clase de pruebas, no ha derogado los Artículos 1690, en su No. 7, y 1718 de la citada ley procesal, que son compatibles con aquél precepto, y de los cuales se desprende que dicho error, en el caso de ser de hecho, ha de resultar de documentos ó autos auténticos que demuestren la equivocación evidente del Juzgador, y en el caso de ser de derecho, ha de citarse con precisión y claridad la ley ó doctrina legal que se crea infringida, y el concepto en que lo haya sido.

*Considerando:* que con arreglo á la doctrina anteriormente expuesta, no cabe discutir en casación los errores de hecho que se suponen cometidos en la apreciación de las pruebas, por no basarse en documento ó auto auténtico alguno que demuestre la equivocación evidente del Juzgador; y que por lo que atañe á los errores de derecho, en la misma apreciación de pruebas, con infracción de los artículos 1232, 1249 y 1253 del Código Civil, tales errores son de desestimarse, pues el demandado, Don Francisco Cancel, no confesó, al absolver posiciones, que maltratara de obra á su esposa,

counsel for Doña Isabel Caamaño making his appearance at the hearing.

*Mr. Alvarez Nava*, for appellant.

*Mr. Rossy (Manuel F.)*, for respondent.

*Mr. del Toro*, Fiscal of the Supreme Court.

ASSOCIATE JUSTICE HERNANDEZ, after making the above statement of facts, delivered the following opinion of the Court:

Rule 79 of General Order No. 118, in prescribing that appeals in cassation for violation of law, in addition to the cases mentioned in the Law of Civil Procedure, shall also lie for error in the consideration of all sorts of evidence, has not repealed articles 1690, paragraph 7, and 1718 of the aforesaid law of procedure, which are consistent with said provision whereby it is required that such error, if of fact, shall be apparent from documents or authentic acts which show the evident error of the judge, and if of law, the law or legal doctrine alleged to have been violated shall be precisely and clearly cited, as well as the manner in which the violation occurred. According to the doctrine above set forth, the errors of fact which are supposed to have been committed in the consideration of evidence cannot be discussed in an appeal in cassation, inasmuch as they are not based on any document or authentic act which shows the evident error of the judge; and as regards the errors of law in the aforesaid consideration of evidence, involving a violation of articles 1232, 1249 and 1253 of the Civil Code, such allegations of error cannot be sustained, inasmuch as the defendant, Francisco Cancel, did not confess when replying to the questions propounded to him, that he had physically ill-treated his wife, Isabel Caamaño, nor did the trial Court consider proven any fact having a precise and direct connection, according to the rules of human judgment, with the ill-treatment that could constitute cause for divorce. The alleged violation of section 19 paragraph 3, of General Order of March 17, 1899, in connection with

Doña Isabel Caamaño, y tampoco el Tribunal sentenciador ha estimado acreditado hecho alguno que tenga un enlace preciso y directo, según las reglas del criterio humano, con los malos tratamientos que puedan determinar el divorcio.

*Considerando:* que la infracción del artículo 19, caso 3, de la ·Orden General de 17 de Marzo de 1899, en relación con la sección 8a. de la Ley Foraker, parte del supuesto de la justificación hecha de los malos tratamientos de obra inferidos por Cancel á la recurrente; y faltando, como falta esa justificación, por estimarse improcedentes los errores de hecho y de derecho alegados respecto de la apreciación de las pruebas, también aquella infracción es.de desestimarse.

*Considerando:* que carece de finalidad jurídica discutir si se ha infringido, por su no aplicación, el artículo 105 del Código Civil anterior, pues no habiendo estimado probado el Tribunl sentenciador la existencia de malos tratamientos de obra, sinó la de un disgusto entre los cónyuges litigantes, ocurrido el día 5 de Enero de 1901, poco importa á las prètensiones de la parte recurrente que sea necesaria una serie de actos de fuerza ó violencia, ó que baste algún hecho aislado de ese carácter para determinar el divorcio.

*Considerando:* en su consecuencia, que el recurso es improcedente por todos y cada uno de los motivos que le sirven de fundamento.

*Fallamos:* que debemos declarar y declaramos no haber lugar al recurso de casación por infracción de ley, interpuesto por Doña Isabel Caamaño y Colón, á la que condenamos en las costas; y con devolución de los autos, comuníquese esta resolución al Tribunal de Distrito de Arecibo, á los fines procedentes.

Jueces concurrentes: Sres. Presidente, Quiñones, y Asociados, Figueras, Sulzbacher y MacLeary.